BRIAN J. O'NEILL (SBN 298108)
LAURA STRAZZO (SBN 312593)
PATTERSON & O'NEILL, PC
235 Montgomery Street, Suite 950
San Francisco, CA 94014
Tel: (415) 907-9110
Fax: (415) 907-7704
brian@pattersononeill.com
laura@pattersononeill.com

Attorneys for Petitioner and Plaintiff
STANFORD53101 LLC

PATTERSON & O'NEILL, PC
235 MONTGOMERY STREET, SUITE 950
SAN FRANCISCO, CALIFORNIA 94104

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STANFORD53101 LLC, | Case Number: |
| Plaintiff and Petitioner, | **COMPLAINT FOR DAMAGES; PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY** |
| vs. | |
| CITY OF PALO ALTO, PALO ALTO CITY COUNCIL and DOES 1-10, | (42 U.S.C § 1983; C.C.P. § 1094.5; C.C.P § 1085) |
| Defendants and Respondents. | **DEMAND FOR JURY TRIAL** |

Plaintiff and Petitioner Stanford53101 LLC, represented by Stanford Orion (SO) ("Plaintiff"), by and through its attorney, Patterson & O'Neill, PC, allege as follows:

**JURISDICTION**

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that

1
COMPLAINT FOR DAMAGES; PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY

the controversy arises under the United States Constitution and laws and under 42 U.S.C. § 1983, as hereinafter more fully appears.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367(a) in that the causes of action stated herein arise out of a common nucleus of operative fact, and thus form the same case or controversy under Article III of the United States Constitution.

2.      This Court has the authority to grant declaratory relief under 28 U.S.C §§ 2201 and 2202.

3.      This Court has the authority to grant injunctive relief under Federal Rules of Civil Procedure 57 and 65.

## INTRADISTRICT ASSIGNMENT

4.      Pursuant to Local Rule 3-2.(c) and (d), this action arose in Palo Alto, California and thus should be assigned to the Court's San Jose Division.

## VENUE

5.      Venue is proper pursuant to 28 U.S.C. § 1391(a) in that all defendants/respondents reside in this judicial district and the events giving rise to the claims occurred in this district.

## PARTIES

6.      Plaintiff Stanford53101 LLC is the owner of the real property commonly known as 531 Stanford Avenue, Palo Alto, CA (the "Property").

7.      Defendant and Respondent CITY OF PALO ALTO (the "City") is an incorporated municipality in the State of California.

8.      Defendant and Respondent CITY COUNCIL (the "City Council") is a is a policy making, legislative, and quasi-judicial municipal body with the authority to hear appeals of the Building Official's Orders to Demolish buildings within the City.

9.      Plaintiff is not aware of the identities of defendants/respondents DOES 1-10, who are responsible for the acts and omissions alleged herein and that caused damage to Plaintiff; therefore, Plaintiff will amend this Complaint when the true identities of DOES 1-10 are ascertained.

10.     Plaintiff is informed and believes that at all times mentioned in this Complaint, all defendants/respondents were the agents or employees of their co-defendants/respondents, and in

PATTERSON & O'NEILL, PC
235 MONTGOMERY STREET, SUITE 950
SAN FRANCISCO, CALIFORNIA 94104

COMPLAINT FOR DAMAGES; PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY

doing the things alleged in this Complaint, were acting within the course and scope of that agency and employment.

## STATEMENT OF FACTS

11.    In 2010, Fortune Sun, Inc. ("Fortune") purchased the Property and its business commonly known as the Stanford Terrace Inn ("STI") located very close to the campus of Stanford University. STI was a well-known hotel in Palo Alto that had operated for many decades prior to Fortune's ownership, hosting many guests including many visitors to Stanford and individuals working and studying at Stanford. STI generated many millions of dollars in both transient and extended stay revenue, which resulted in millions of dollars in transient tax revenue for the City. The property has existing full kitchens that have historically accommodated Stanford University faculty and hospital interns with large families for nearly a century.

12.    Fortune operated STI profitably for approximately seven years until it sold the Property to Aurora Rising, Inc. ("Aurora") in early 2018. Aurora operated STI profitably until the COVID pandemic hit the global economy and, in particular, the hospitality industry in the Spring of 2020. As a result of COVID, STI rapidly lost transient customer lodgings and began to operate at a loss.

13.    STI, however, maintained extended-stay operations at a significant expense to provide lodging for the community under a business permit (City of Palo Alto Business Registry Certificate (No. 9932018276)) and a lodging club membership agreement. As a result of the involuntary cessation of transient stays due to the global health emergency, STI ceased generating transient tax revenue for the City.

14.    On or about June 18, 2021, the City sent a letter to Aurora expressing preliminary interest in purchasing the Property for possible inclusion in the State's Project HomeKey program to provide housing for unhoused residents. The letter was an informal inquiry only, not a formal offer, and requested a response by July 6, 2021. On or about June 22, 2021, Aurora replied to the City that the Property was under long-term lease, planned for redevelopment as a high-end hotel, and not for sale. The City did not take no for an answer and

sent similar inquiries subsequently in 2022.

15.    On or about May 14, 2023, Aurora wrote to the City stating an intent to submit a conceptual housing plan in accordance with State housing element requirements, but aspiring to collaborate with the City in the re-development of the Property. Aurora clarified that the submission was not intended as a Builder's Remedy application, but requested that the City review it under similar streamlined criteria, reserving the right to have it treated as a Builder's Remedy application if collaboration was not feasible. The City expressed limited interest and never followed up on the application.

16.    On May 17, 2023, Aurora submitted a second version of a five-story senior/BMR housing plan to the City to request that it be considered for adoption in the City's Housing Element re-zoning process to be completed by the end of 2023. Aurora further stated that if the City could not support inclusion by that deadline, the submission should be treated as a Builder's Remedy application dated May 17, 2023.

17.    On or about February 28, 2024, the City sent a "Courtesy Notice" to Aurora regarding the City's intention to inspect the Property and adjacent properties alleging a City code enforcement investigation had determined that the Property was being used for sleeping purposes. The City asserted that such use may not align with current regulations. In said notice, the City stated: "Our intention is not to escalate the matter in a non-cooperative manner. In fact, our goal is just to ensure the well-being of everyone involved. To address potential life and safety concerns, it is important that we conduct a simple inspection of the property/parcels."

18.    The City further asserted that during COVID-19 the City Council had passed a new ordinance prohibiting lodging facilities from hosting guests longer than thirty days and that, as a result of Aurora's then use of the building as a lodging club, it was likely that it would lose its grandfathered conditional use permit to use the building as a hotel despite the fact that the hotel was located in a residential neighborhood.

19.    While other properties continued to operate extended-stay lodging under grandfathered deeds without interference, STI was disproportionately singled out for aggressive enforcement action.

COMPLAINT FOR DAMAGES; PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY

PATTERSON & O'NEILL, PC
235 MONTGOMERY STREET, SUITE 950
SAN FRANCISCO, CALIFORNIA 94104

20.     Counsel for Aurora promptly responded and expressed its commitment to lawful operation of the Property, requested a cooperative dialogue to allow students to remain through the school year while compliance issues were addressed.

21.     However, that same day, March 11, 2024, the City issued a Final Notice to Inspect, which asserted that the Property was being used for living purposes contrary to regulations, required inspection by March 14, 2024, and warned that failure to cooperate could result in an inspection warrant or interruption of utility services.

22.     The City further indicated that it would not review any redevelopment applications for the Property until it conducted an inspection and that, as a result, tenant displacement might occur.

23.     Counsel for Aurora repeatedly attempted to engage the City in dialogue regarding the code-enforcement issues and redevelopment plans but to no avail. While these planning discussions were ongoing, the City continued preparations for inspection. Under mounting pressure from City officials, Aurora ultimately consented to permit the inspection of the Property.

24.     On March 18, 2024, the City conducted a full inspection of the Property, sending more than ten officials, including code enforcement, building, and fire officials. Many officials arrived in uniform with badges, conducted an aggressive and comprehensive search, and photographed and documented alleged technical code violations throughout the premises.

25.     On or about March 21, 2024, the City issued a formal Notice of Violation citing alleged deficiencies for use of the Property as residential housing, including lack of fire sprinklers and alarms, high combustible storage, unpermitted electrical and structural work, corroded plumbing, blocked egress routes, and inoperable elevators. The Notice required immediate fire-watch services by the very next day (March 22, 2024), evacuation of upper floors, and numerous corrective actions by March 25, 2024, and warned of possible declarations of substandard conditions, fines, or abatement orders if compliance was not achieved. Many of these purported violations were due to the alleged "abandonment" of transient used and "conversion" to extended stays.

PATTERSON & O'NEILL, PC
235 MONTGOMERY STREET, SUITE 950
SAN FRANCISCO, CALIFORNIA 94104

PATTERSON & O'NEILL, PC
235 MONTGOMERY STREET, SUITE 950
SAN FRANCISCO, CALIFORNIA 94104

26. The City's sudden actions, after years of engagement regarding potential redevelopment of the Property, appeared to be in retaliation for the Property owner's decision not to sell the Property or repurpose it in accordance with the City's preferred high-density housing agenda.

27. While continuously ratcheting up enforcement pressure, the City simultaneously took steps to prevent the property from being redeveloped. Each time an application for redevelopment was submitted, the City would remove the application from the City's application portal. The City unlawfully terminated an application for under the "Builder's Remedy," a state law that permits property owners to submit projects that are inconsistent with local zoning rules when the local government is out of compliance with state housing law. (See Gov. Code § 65589.5(d)(5).) The City refused to accept payment for the application, stripping the owners of their state law vesting rights under the Builder's Remedy as the City had subsequently come into compliance with state law such that the Builder's Remedy was no longer an option.

28. During an intake meeting in March 2024, City Planning staff urged a high-density eight-story proposal, with a significant amount of affordable units. Ownership did not immediately agree to the eight-story proposal due to the economics, and the City immediately initiated a $500-per-day fine and emergency fire watch program.

29. A number of the cited "violations" were inaccurate, immaterial, or grossly overstated, which seemed designed to create a false impression that the ownership's and management's representative was a negligent "slum lady" rather than a reputable and conscientious manager who had long operated a three-star hotel and, during difficult post pandemic years, allowed Stanford faculty, interns, or students to reside in quality accommodations at a fraction of market value.

30. For example, in or about early April 2024, one City official represented during our morning meeting in the City Hall that the City would not post a notice of fines to be paid to the residents of the Property for one week to give the owner time to help relocate the residents. However, a notice of fines was posted by the City immediately after the meeting on that same

COMPLAINT FOR DAMAGES; PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY

day. Doing so required the SLC operating company to pay over $300,000 in total to the residents within 24 hours.

31.    Thereafter, enforcement and remediation efforts ensued for over 18 months including, but not limited to, the City requiring alleged hazardous materials remediation in order to "close" the Property as mandated by the City. Although STI endeavored to comply with extensive and constantly modified hazmat remediation demands by the City, the City repeatedly raised new issues and contended that the hazmat remediation was incomplete Despite a final walkthrough inspection, STI never received a formal hazmat inspection clearance report.

32.    During one inspection, the City demanded a right of entry to utilize the property as training grounds for fire department personnel.

33.    In August 2025, Aurora restructured its business entities and transferred the Property to a new entity, Plaintiff, which was made up of the same members as Aurora and was for all intents and purposes related to this Complaint, the same entity.

34.    In early September 2025, Plaintiff submitted an application to the City for development of the Property based on California SB-330/AB130 expedited housing development with CEQA exemption in order to streamline the planning and approval process. On September 11, 2025, Plaintiff's representative and counsel met in person with City officials, including the building inspector, to discuss a collaborative and orderly deconstruction plan. During that meeting, the building inspector stated that if demolition was not completed by the time the T-Mobile lease expired in November 2027, the City would exercise its eminent domain powers to take ownership and possession of the property from the owners.

35.    Consistent with the September 11, 2025 meeting, on September 15, 2025, counsels for both the City and the property owners agreed to submit a formal deconstruction permit application and the City agreed to work to find an alternative location for the T-Mobile communications facility before the deconstruction takes place.

36.    Despite these good-faith efforts and agreement to cooperate, on or about October 17, 2025, the City out of nowhere mailed a Notice and Order of Demolition ("Demolition Order") to the vacant Property. The Demolition Order set forth an aggressive and burdensome

PATTERSON & O'NEILL, PC
235 MONTGOMERY STREET, SUITE 950
SAN FRANCISCO, CALIFORNIA 94104

scheme of demands, requiring Ownership to apply for deconstruction and demolition permit within thirty days, complete hazardous-material closures, disconnect all utilities, obtain multiple environmental and grading permits, and fully demolish and remove the building by May 18, 2025 under threat of criminal prosecution, civil abatement, receivership, and daily fines if compliance was not achieved. The order further warned that failure to act could result in City authorized demolition, cost recovery, and the filing of a building lien.

37.    The City's Demolition Order disregarded the extensive record of collaboration between Aurora, Plaintiff, their counsel, and City officials concerning a consensual and cooperative deconstruction of the Property. Coordination was important because the Property houses a T-Mobile cellular tower lease that provides critical 911 services to the City, which are endangered by the City's Demolition Order. The Demolition Order appeared to be issued in bad faith and in contradiction to the parties' stated intentions to work collaboratively on a solution for the Property. This is further supported by the City's rejection of ten independent permit applications submitted by Plaintiff and its predecessor entity in interest, and the City's failure to assist them in processing the applications.

38.    City officials also engaged in acts of intentional discrimination against Plaintiff's member representative, who is Asian-American. One building official made derogatory remarks concerning her ethnicity, asserting that her being Asian made her allegedly paranoid in dealings with City officials and supposedly incapable of complying with City ordinances. That official made comments about Asian-Americans always looking for cheap ways to solve serious problems, which was both extremely offensive and racist, and also demonstrable untrue in this circumstance. Plaintiff has, and continues to expend, over $1 million to address the issues in the face of the City's active retaliation campaign and refusal to allow Plaintiff to redevelop the Property. Furthermore, it is estimated that compliance with the demolition order, if carried out, will cost an additional millions of dollars, representing nearly one-quarter of the property's total market value.

39.    On November 7, 2025, Plaintiff, through its property manager Stanford Orion, sent a letter to the City outlining deficiencies in the Demolition Order. On November 13, 2025,

COMPLAINT FOR DAMAGES; PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY

Plaintiff timely appealed the Demolition Order to the City Council.

40.     While the City continued to ratchet up pressure to demolish the building, the City continued to delay attempts to redevelop the property. The application for 22 single-family homes in September was submitted under a new expedited state law procedure where the City was required to find the project exempt and issue an approval within a few months.

41.     Despite informing property's counsel back in September 2025 that the City was processing the application per these expedited procedures, the City waited until December (when the City was supposed to issue its approval) to inform the owners that the City's agreement to process the application was a "mistake."

42.     Over the next few months, the City continued to delay processing the redevelopment application.

43.     On April 20, 2026, the City Council adopt a resolution denying the appeal and upholding the Chief Building Official's Demolition Order. This action followed.

44.     Plaintiff has fully exhausted all administrative remedies prior to bringing this action.

## FIRST CLAIM
### (Violation of the Constitutional Right to Petition and of Access to Courts (42 U.S.C. § 1983))

45.     Plaintiff incorporates and realleges the preceding paragraphs as if fully restated herein.

46.     The right of access to the courts is subsumed under the constitutional right to petition the government for redress of grievances, and deliberate retaliation by state actors against an individual's exercise of this right is actionable under the First Amendment of the U.S. Constitution.  A person's right of access to judicial and quasi-judicial bodies to decide controversies is a fundamental component of our society that cannot be impaired by the threat of punishment or retaliation.

47.     The protections of the First Amendment have been extended through the Fourteenth Amendment to prohibit the abridgement of the freedom of speech and freedom of expression by state and local governments.

PATTERSON & O'NEILL, PC
235 MONTGOMERY STREET, SUITE 950
SAN FRANCISCO, CALIFORNIA 94104

48. Persons violating the First and Fourteenth Amendments under color of state law are liable under 42 U.S.C. § 1983.

49. For a regulation of commercial speech to be constitutional, courts apply a four-part test: 1) if the speech concerns lawful activity and is not misleading; 2) the asserted governmental interest must be substantial; 3) the regulation must directly advance the governmental interest asserted; and 4) the regulation must not be more extensive than is necessary to serve that interest. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980).

50. Plaintiff, and its predecessor entity in interest and agents, exercised their constitutional right to petition the government for redress of its grievances, by: (1) declining the City's offer to purchase the Property; (2) submitting development applications using state-law protections of the Builder's Remedy; and (3) challenging the City's Demolition Order. This is speech protected by the First Amendment. In response to Plaintiff exercising the aforesaid rights, Defendants deliberately and intentionally retaliated against Plaintiff via their unlawful refusal to process Plaintiff's development applications, issuance and enforcement of the Demolition Order. Defendants' actions were done under color of state and local law, in direct response to Plaintiff's aforesaid actions, and meant to cause the deprivation of Plaintiff's exercise of its rights of freedom guaranteed by the First and Fourteenth Amendments of the United States Constitution. Moreover, it does not matter if Defendants had additional, legitimate reasons for denying Plaintiff's development applications, and imposing the Demolition Order (though they did not), as long as the retaliatory reason was a "motivating factor."

51. Because Defendants' condemnation of the Property and issuance of the Demolition Order was retaliatory in nature in that it was meant to stifle Plaintiff's constitutional rights, Plaintiff is entitled to a judgment in an amount to be proven at trial and recovery of its reasonable attorneys' fees under 42 U.S.C. § 1983.

**SECOND CLAIM**
**(Violation of Due Process (42 U.S.C. § 1983))**

52. Plaintiff incorporates and realleges the preceding paragraphs as if fully restated herein.

PATTERSON & O'NEILL, PC
235 MONTGOMERY STREET, SUITE 950
SAN FRANCISCO, CALIFORNIA 94104

53.    A substantive due process allegation lies where a party alleges the government engaged in egregious official conduct that can be said to be arbitrary in the constitutional sense or an "'abuse of power' lacking any 'reasonable justification in the service of a legitimate governmental objective.'" *Shanks v. Dressel,* 540 F.3d 1082, 1088 (9th Cir. 2008) (intern. cit. omit.) "[T]he rational relation test will not sustain conduct by state officials that is malicious, irrational or plainly arbitrary." *Lockary v. Kayfetz,* 917 F.2d 1150, 1155 (9th Cir. 1990).

54.    The essence of due process is the requirement that a "person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). Due process is ultimately a balance of three considerations: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at p. 335.

55.    "When a municipal ordinance regulates a useful business enterprise, it is subject to scrutiny by the courts with a view to determining whether the ordinance is a lawful exercise of the police power, or whether it amounts to unwarranted and arbitrary interference with the constitutional rights to carry on a lawful business, to make contracts, or to use and enjoy property." *Safeway Inc. v. City and County of San Francisco*, 797 F. Supp. 2d 964, 969 (N.D. Cal. 2011) (citing *Dobbins v. Los Angeles*, 195 U.S. 223, 235–36 (1904) and *Lawton v. Steele*, 152 U.S. 133, 137 (1894)).

56.    The Demolition Order, which is premised on the City's assertion that current law prohibited the use of the Property as a Lodging Club and that the Property is residential not a hotel, deprives Plaintiff of the ability to demolish the Property in conjunction with its proposed redevelopment, is a targeted, arbitrary determination, expressly made to punish Plaintiff for what the City considers to be its past misdeeds.  Prior to the Demolition Order, Defendants had full knowledge of the history and status of the Property, including its ongoing grandfathered status as a hotel and use as a Lodging Club.  After Plaintiff and its predecessor entity in interest submitted redevelopment applications, because Defendants are angry at Plaintiff for the reasons alleged

herein, the City promulgated its abusive enforcement activity by conducting aggressive enforcement activities, immediately issuing the Demolition Order, and arbitrarily refusing to suspend enforcement of the Order pending the approval of Plaintiff's redevelopment application. Defendants have no rational basis for the Demolition Order or its actions, and any offered is plainly pretext, given the history of this dispute.

57.    As a result of Defendants' actions, Plaintiff has suffered out of pocket expenses, loss of Property value, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.  Plaintiff is also entitled to recover its attorneys' fees under 42 U.S.C. § 1983.

## THIRD CLAIM
### (Inverse Condemnation – Against All Defendants)

58.    Plaintiff incorporates and realleges the preceding paragraphs as if fully restated herein.

59.    The Fifth Amendment's Takings Clause provides: "nor shall private property be taken for public use, without just compensation." The Takings Clause applies to state and local governments. *See, e.g., Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 189 (2019).

60.    Property is "taken" when: (1) the property has been physically invaded; (2) the property has been physically damaged; or (3) an intangible intrusion onto the property has occurred that is direct, substantial, and peculiar to the property itself. *Today's IV, Inc. v. Los Angeles County Metropolitan Transportation Authority*, 83 Cal.App.5th 1137, 1166 (2002). Even where there is no physical intrusion, a takings nonetheless occurs when a government action (1) deprives the owner of all economically viable use of the property; or (2) substantially interferes with the ability of a property owner to make economically viable use of, derive income from, or satisfy reasonable investment-backed profit expectations with respect to, the property. *Lucas v. South Carolina Costal Council*, 505 U.S. 1003, 1016 (1992); *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 123 (1978).) Even an action that temporarily takes an owner's property without just compensation violates the Takings Clause. (*First English Evangelical Lutheran Church v. Los Angeles County*, 482 U.S. 304 (1987).)

61.    When the government physically appropriates property or interferes with an

PATTERSON & O'NEILL, PC
235 MONTGOMERY STREET, SUITE 950
SAN FRANCISCO, CALIFORNIA 94104

owner's right to exclude others from it without paying just compensation, a per se taking has occurred.

62.     Defendants violated the Fifth Amendment of the United States Constitution by condemned the building, preventing Plaintiff, its property manager, and agents from accessing their own building, and temporarily taking the property from Plaintiff. This action led to the buildings falling into greater disrepair and has caused direct physical damage to the property. The City has now ordered the demolition of the buildings, which is a direct physical taking of the property. The City failed to make the findings necessary to support its Demolition Order, neglecting to assess the value or document the cost of repairs to demonstrate that demolition is constitutionally permissible. The City has also failed to process Plaintiff's applications to redevelop the Property pursuant to state law requirement, leaving Plaintiff with no economically viable use of its property.

63.     For the foregoing reasons, Defendants' actions constitute a taking without just compensation, and thus violates Plaintiff's rights protected by the United States Constitution. As a result of Defendants' actions, Plaintiff has suffered out of pocket expenses, loss of property value, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.  Plaintiff is also entitled to recover its attorneys' fees under 42 U.S.C. § 1983.

### FOURTH CLAIM
### (Violation of Equal Protection (42 U.S.C. § 1983))

64.     Plaintiff incorporates and realleges the preceding paragraphs as if fully restated herein.

65.     The Equal Protection Clause of the Constitution protects individuals from selective enforcement of laws based on race, ethnicity, or another protected characteristic. *United States v. Armstrong*, 517 U.S. 456 (1996). Even if a law is neutral on its face, applying it with an "evil eye and an unequal hand" violates the Equal Protection Clause. *Yick Wo v. Hopkins*, 118 U.S. 356 (1886).

66.     As reflected by the record and as alleged herein, Defendants unlawfully singled out and targeted Plaintiff for draconian punishment via its condemnation of the Property, aggressive enforcement actions, and imposition of the Demolition Order. The City has direct

knowledge that other hotels rent rooms on a long-term basis, but has singled out Plaintiff for selective enforcement. The actions of City officials demonstrate this selective enforcement was based upon the race and ethnicity of the Ownership's representatives who are Asian-American. One building official made derogatory remarks concerning the Ownership's representative being Asian made her incapable of complying with City ordinances and looking for cheap ways to fix code issues.

67.    City officials have aggressively enforced minor code violations and pursued a campaign of intimidation. Based on statements made during inspections, these actions were taken based on discrimination and animus.   As reflected by the record and as alleged herein, Defendants' aforesaid acts were specifically made to target, discriminate against, and punish Plaintiff by preventing it from lawfully exercising its vested rights and/or protected property interests.  Additionally, as reflected by the record, such decisions were intentionally unequal in that similarly situated properties were not treated in the same manner, and any stated rational government purpose to the contrary is pretext.  Defendants therefore violated Plaintiff's right to equal protection of the laws.

68.    Plaintiff has suffered out of pocket expenses, loss of property value, emotional distress, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.  Plaintiff is also entitled to recover its attorneys' fees under 42 U.S.C. § 1983.

**FIFTH CLAIM**
**(Violation of fundamental vested rights)**

69.    Plaintiff incorporates and realleges the preceding paragraphs as if fully restated herein.

70.    "Where a [business] permit has been properly obtained and in reliance thereon the permittee has incurred material expense, he acquires a vested property right to the protection of which he is entitled." *O'Hagen v. Bd. of Zoning Adjustment*, 19 Cal. App. 3d 151, 158 (1971).

71.    Defendants' imposition of the Demolition Order, which is largely premised on the City's claim that the Property lost its grandfathered status as a hotel, violates Plaintiff's fundamental vested rights.  Plaintiff has secured a vested right to use the Property as a hotel under a properly issued conditional use permit and is entitled to continue to use the Property as a

PATTERSON & O'NEILL, PC
235 MONTGOMERY STREET, SUITE 950
SAN FRANCISCO, CALIFORNIA 94104

hotel as approved, without change or modification. Defendants cannot extinguish a grandfathered use by improperly condemning the Property and ordering it demolished. The Demolition Order unlawfully deprives Plaintiff of vested rights without adequate amortization and/or compensation.

72.    As a result of Defendants' actions, Plaintiff has suffered out of pocket expenses, loss of property value, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.

## SIXTH CLAIM
### (Violation of Right to Contract)

73.    Plaintiff incorporates and realleges the preceding paragraphs as if fully restated herein.

74.    Article I, Section 10 of the U.S. Constitution strictly forbids governments from "impairing the Obligation of Contracts." A violation of the Contracts Clause occurs if a government's action substantially impairs an existing contractual relationship. *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992).

75.    The City condemned the buildings and purported to rescinded the Property's vested rights and ordered the property to be vacated. The City knew Plaintiff had existing contracts with the occupants of the building. The City had agreed not to post a notice of fines while Plaintiff worked to relocate the occupants yet posted the notice within one day. The City's actions substantially impaired Plaintiff's contracts with the occupants, leading to hundreds of thousands of dollars in fines and payments to the occupants.

76.    The City is also aware that Plaintiff has an existing lease agreement with T-Mobile for a communications tower atop the buildings. The City's Demolition Order will substantially interfere with this existing contractual relationship, forcing Plaintiff to breach the contract and incur additional damages.

77.    As a result of Defendants' actions, Plaintiff has and will continue to suffer out of pocket expenses, loss of property value, and loss of opportunity value in an amount that is yet to be ascertained to be further determined at trial.

**PATTERSON & O'NEILL, PC**
235 MONTGOMERY STREET, SUITE 950
SAN FRANCISCO, CALIFORNIA 94104

**SEVENTH CLAIM**
**(Writs of Mandate (CCP § 1094.5 or § 1085))**

78.    Plaintiff incorporates and realleges the preceding paragraphs as if fully restated herein.

79.    Code of Civil Procedure §§ 1094.5 or 1085 authorizes Plaintiff to seek a writ of mandate/mandamus, and which authorizes the Court to review and set aside public agency decisions involving a prejudicial abuse of discretion.

80.    Plaintiff requests the Court issue a declaration, and/or writ of mandate or mandamus, setting aside and voiding the Demolition Order.  Plaintiff also seeks an immediate stay to enjoin Defendants from enforcing the Demolition Order, as such enforcement would further harm Plaintiff by violating its statutory and constitutional rights, and the issuance of such a stay would not be against the public interest.

81.    By condemning the Property and issuing the Demolition Order, Defendants exceeded their jurisdiction, prevented Plaintiff from having a fair trial, failed to proceed as required by law, and prejudicially abused their discretion.

82.    Moreover, Defendants' aforesaid acts constitute an unconstitutional per se, regulatory, de facto, and physical taking of Plaintiff's Property without just compensation under the California and U.S. Constitutions, violates Plaintiff's constitutional rights to petition the courts, violates Plaintiff's vested rights, and violates Plaintiff's constitutional rights to due process and equal protection of the law.  The imposition of the Decision and failure to issue the Garage Permit are intentionally unequal and meant to target, retaliate, and discriminate against Plaintiff, and thus any purported legitimate and/or rational basis for the same is pretext.

83.    Because Defendants' findings are not supported by the evidence, the Demolition Order deprives Plaintiff of its vested rights and/or property interests, and perpetrates an unlawful uncompensated taking of Plaintiff's Property and violates other constitutional rights, the standard of review for which falls under the independent judgment test/de novo review.

84.    Plaintiff exhausted its administrative remedies as alleged herein.

85.    Plaintiff has a beneficial interest in ensuring that the Demolition Order is struck down, so that Plaintiff's statutory and constitutional rights are not infringed upon.  Plaintiff does

**PATTERSON & O'NEILL, PC**
235 MONTGOMERY STREET, SUITE 950
SAN FRANCISCO, CALIFORNIA 94104

COMPLAINT FOR DAMAGES; PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY

not have a plain, speedy, or adequate remedy in the ordinary course of law, and therefore writ relief is necessary to compel Defendants to correct their actions against it, which are unlawful and in excess of their authority.

86.    Plaintiff is entitled to recover its attorneys' fees under Cal. Civ. Code § 1021.5, and because the Decision is arbitrary and capricious, lacking any reasonable basis, and/or discriminatory and illegal, Plaintiff is additionally entitled to attorneys' fees under Govt. Code § 800(a).

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

**For Claims One through Six**:

1.    For special damages for out-of-pocket expenses, loss of property value, and loss of opportunity costs in an amount that is yet to be ascertained;

2.    For general damages according to proof, in an amount that is yet to be ascertained;

3.    For an award of attorneys' fees and costs as allowed by law; and

4.    For any other relief that the Court deems just and proper.

**For Claim Seven**:

1.    For a writ of mandamus or mandate or other appropriate relief, including an injunction, declaration, and/or order, setting aside and voiding the Decision for all of the reasons alleged above;

2.    For a writ of mandamus or mandate or other appropriate relief, including an injunction, declaration, and/or order, compelling Defendants to withdraw the Demolition Order for all of the reasons alleged above;

3.    For a judgment that Defendants' conduct as alleged is an unlawful taking and has prevented Plaintiff from maintaining economically viable use of its Property without just compensation in violation of Plaintiff's rights under the Fifth Amendment of the United States Constitution, which prohibits the taking of private property for public use without just compensation; and upon such judgment, give Defendants the opportunity to revoke the Demolition Order to mitigate its damages in Plaintiff's inverse condemnation action against Defendants;

PATTERSON & O'NEILL, PC
235 MONTGOMERY STREET, SUITE 950
SAN FRANCISCO, CALIFORNIA 94104

4.      For a judgment that Defendants have violated Plaintiff's right to petition the courts, due process rights, equal protection rights, privacy rights, and vested property rights and/or property interests;

5.      For an immediate stay enjoining Defendants from enforcing the Demolition Order on Plaintiff and its Property pending the determination of the merits;

6.      For costs of suit herein, including attorneys' fees;

7.      For any other relief that the Court deems just and proper.

Dated: July 16, 2026                    PATTERSON & O'NEILL, PC

By:      Brian O'Neill
         Laura Strazzo
         Attorneys for Plaintiff and Petitioner
         STANFORD53101 LLC

COMPLAINT FOR DAMAGES; PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury for all claims as stated herein.


Dated: July 16, 2026                    PATTERSON & O'NEILL, PC


By:     Brian O'Neill
        Laura Strazzo
        Attorneys for Plaintiff and Petitioner
        STANFORD53101 LLC

COMPLAINT FOR DAMAGES; PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY

PATTERSON & O'NEILL, PC
235 MONTGOMERY STREET, SUITE 950
SAN FRANCISCO, CALIFORNIA 94104

**VERIFICATION**

I, Brian O'Neill, am the attorney of record for STANFORD53101 LLC, Plaintiff and Petitioner in the above-entitled action. Plaintiff and Petitioner is absent from the county where it has its office and is unable to verify the Complaint. I am authorized to make this verification on behalf of STANFORD53101 LLC.

I have read the foregoing COMPLAINT FOR DAMAGES; PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY and know its contents. I am informed and believe and on that ground allege that the matters stated in the COMPLAINT FOR DAMAGES; PETITION FOR WRIT AND REQUEST FOR IMMEDIATE STAY are true of my own knowledge.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 16, 2026.            _____
                                      Brian O'Neill

**PATTERSON & O'NEILL, PC**
235 MONTGOMERY STREET, SUITE 950
SAN FRANCISCO, CALIFORNIA 94104